44 So.2d 670 (1950)
ST. PETERSBURG COCA-COLA BOTTLING CO.
v.
CUCCINELLO.
Supreme Court of Florida, Special Division B.
February 7, 1950.
Rehearing Denied March 18, 1950.
*672 Carey & Harrison, St. Petersburg, and Clayton, Arnow & Duncan, Gainesville, for appellant.
Askew & Earle and Thomas V. Kiernan, St. Petersburg, for appellee.
TAYLOR, Associate Justice.
Donna Cuccinello, a minor suing by her next friend, recovered a judgment for personal injuries sustained by coming into contact with a delivery truck of the defendant, St. Petersburg Coca Cola Bottling Company, a corporation. The defendant has appealed.
The declaration is in two counts, the first count alleging negligence in the operation of defendant's truck, and the amended second count alleging that defendant's servant and employee, acting within the scope of his employment was trespassing upon the property of plaintiff's father, Anthony Cuccinello, and, while so trespassing, ran the defendant's truck over and upon the plaintiff causing the injuries complained of.
It is first urged that the Circuit Court erred in overruling defendant's demurrer to the amended second Count of plaintiff's declaration. Although there are some twenty-eight assignments of error, this question is not presented in such manner as to permit us, under the prior decisions of this Court, to consider it. The first and second assignments of error attempt to present the question, but in the first assignment the ruling is coupled in the same assignment with alleged error in overruling defendant's demurrer to the first count of the declaration, denying a motion for a bill of particulars and denying a motion to strike certain portions of the declaration. The second assignment of error joins in the overruling of the demurrer to the amended second count of the declaration with the overruling of a demurrer to the first count.
This Court has repeatedly held: "One cardinal rule relating to appellate practice in this state, which has received at the hands of this court as much notice as any one other perhaps, is that * * * where a single assignment attacks a plurality of rulings of the trial court, whether upon the pleadings, the admission or rejection of evidence, or the granting or refusal of instructions to the jury, it will be unavailing unless all such rulings so grouped en masse are erroneous." Kloss v. State, 95 Fla. 433, 116 So. 39.
The first count of plaintiff's declaration is clearly sufficient to withstand attack by demurrer. Its insufficiency is not even argued here. It follows that we should not consider the technical sufficiency of the amended second count. The principal question here argued  whether trespass may be maintained against a principal for acts committed by a servant or employee  will necessarily receive our consideration when we discuss the motions for directed verdict on this count.
The second question presented is based upon the fifth assignment of error which groups en masse the rulings of the Court in sustaining demurrers to the second, third, fourth and fifth pleas to the amended second count of the declaration.
The second plea alleges simple contributory negligence on the part of the plaintiff. Contributory negligence is not a defense to an action for trespass. Since the demurrer was properly sustained as to the second plea to the amended second count of the declaration it is unnecessary, under the rule above stated, to consider the legal sufficiency of the third, fourth or fifth pleas.
At the close of the plaintiff's evidence, and again after all the evidence was in, the defendant moved for a directed verdict in its favor as to each count of the declaration severally. All such motions were denied.
The circumstances surrounding this unfortunate accident were as follows:
Plaintiff's father owned a parcel of land facing west on the east side of Fourth Street, South, in the city of St. Petersburg, and extending east to a paved alley. On the north side of this property he had constructed a building fronting on Fourth Street, South, and extending east approximately *673 one hundred feet, designated as No. 1160. On the south side of this building was a small porch and around the porch and extending for some forty feet along the building was a picket fence enclosing a strip of land about nine feet wide. On the south side of Mr. Cuccinello's property was another building facing Fourth Street South, but extending back only about forty feet. This building is designated as No. 1152. A third building, designated as No. 1162 1/2 was erected on the Southeast corner of the lot. Between No. 1162 and No. 1162 1/2 was an open space used by the plaintiff as a playground. Here her father had erected a swing for her use. A piece of sheet metal about four feet square was leaning against the swing.
Between the picket fence on the south side of No. 1160 and the north wall of 1162 was a narrow driveway. This driveway, and most of the open space on the lot, were paved with shell. At the point where this driveway intersected Fourth Street South was a sign advertising a brand of beer and bearing the words "Beverage Distributors" with an arrow pointing along the driveway. At the time of the accident there was parked in the open space at the rear of No. 1162, a trailer, about eight feet long, facing east, the rear end of which was about two feet from the rear wall of the building. The north side of this trailer was roughly parallel to an imaginary extension of the north side of No. 1162 but about eighteen inches to three feet further south.
At the time of the accident the north part of No. 1160 was occupied by a dry cleaning business operated by a tenant of Mr. Cuccinello, the southwest part of the building was occupied by the Cuccinello family as a home, the southeast part of the building by "Beverage Distributors" a business operated by two brothers by the name of Applefield. No. 1162 and 1162 1/2 were occupied by other tenants. Access could be had by vehicles to No. 1162 1/2 and to the rear part of No. 1160 by use of the alley at the rear of the whole property or the driveway above described.
On May 9, 1947, a one and one-half ton truck with conventional bottled-drink-delivery type body, owned by defendant and operated by one of its employees under the following memorandum instructions: "pick up 5 1/2 cases mty's at Service Distributors 1160 4th st. so. (at rear in the alley)" entered the driveway from Fourth Street South and while proceeding along the driveway came in contact with plaintiff, inflicting upon her very serious injuries.
The foregoing facts are pertinent to a consideration of the sufficiency of the evidence to sustain either count of the declaration, and are either admitted or established by the evidence. The following facts relate primarily to the first count, charging negligence in the operation of the defendant's truck: There was no eye witness to the contact between the truck and the child. Plaintiff, as was her custom, went to kindergarten in the morning, returned home, ate lunch, took a nap and then went out to play in her swing. Shortly thereafter her mother, who was in the house, and two men on the premises heard her scream. They ran to the scene and found the truck stopped and the child lying down on the driveway in front of and in contact with the right rear wheel of the truck. The truck was headed east and the child lay in a north-south direction under the truck with only her head and possibly a small part of her upper body extending out from under the truck. Her right thigh and the pelvic region of her body was badly crushed and torn. The medical testimony is that she suffered a crushing and tearing injury that would require a tremendous amount of force. The child lay opposite the trailer about seven feet east of the building at No. 1162.
The testimony of the truck driver is that, pursuant to his instructions he was proceeding to the address given him to pick up some Coca-Cola bottles; that he had never been to the address before; that he located the address by stopping his truck and getting out to look at the numbers on buildings, that he saw the sign above described by the driveway after locating the numbers on the buildings; that he started into the driveway and was proceeding along it at about five or six miles an hour when he heard a scream "and at *674 that time I could feel a little jar under the wheel," that he immediately stopped the truck and went around it and found the child under the rear wheel; that he got back in the truck and backed off the child; that he was looking ahead as he proceeded along the driveway and did not see the child. He also testified that the child lay in a southeastern direction instead of north and south. He denied having told a Mr. Applefield, one of the owners of Beverage Distributors that he had been looking to his left trying to locate the place of business of Beverage Distributors at the time of the accident. Mr. Applefield testified that he did make such statement to him.
Plaintiff relies upon and the Court charged the jury on the rule of res ipsa loquitur.
One of the latest and best discussions of this rule is found in the able opinion of Mr. Justice Brown, now retired, in the case of Orme v. Burr, 157 Fla. 378, 25 So.2d 870.
Applying the law there announced, to the facts as here developed, we hold that the trial judge was not in error in charging the jury on the rule of res ipsa loquitur.
The defendant was operating a dangerous instrumentality in the private driveway of plaintiff's father some distance from the street, and immediately adjacent to plaintiff's home. Plaintiff, as was her right, was playing in her own back yard. She was of such tender years and immaturity that she was not permitted to testify in her own behalf. It is not necessary to here decide whether the rulings on this question would have been proper had the accident occurred in a public street, or under materially different circumstances. The rule of res ipsa loquitur is not, and in the very nature of things cannot be reduced to an arbitrary formula. Its application must depend upon the exercises of a sound judicial judgment based upon a clear understanding of the purpose and proper function of the rule, and a careful evaluation of the evidence in each case as it arises.
But defendant urges that: "From the testimony of all the witnesses, and from an examination of the photographs, and from a description of the injury, the conclusion is inescapable that the little girl ran from her swing around behind the trailer, between the trailer and the end of the building and ran into the side of the truck. It is equally obvious that when she realized that she was running into a slowly moving truck she screamed and tried to stop but that her feet slipped and she fell under the rear right wheel of the truck and was dragged the short distance that the truck went after the scream * * *"
If the evidence established that the injury occurred in this manner, then defendant would not be liable, and a verdict should have been directed in its favor, on the first count of the declaration. To our minds, however, the evidence justifies, if it does not require, a different conclusion. In the first place the driver of the truck testified that "* * * I heard a scream, and at that time I could feel a little jar under the wheel." And again "I felt the bump, as I said before, under the wheel and when I did I immediately applied the brakes." There is no evidence that the child's clothing or any part of her body was caught in such a way as to cause her to be dragged along. The evidence indicates the contrary. The natural thing to occur if a child fell under a truck would be for the wheels, particularly the rear wheels to which the power is applied, to roll over the child. This is the only way in which the child could get under the wheel, as the driver's testimony indicates she was before the brakes were applied. If brakes had been applied before the child was struck then the locked wheels might have dragged her along the driveway, but this conclusion would be contrary to all the applicable evidence.
Another circumstance tending to negative the defendant's theory is the position in which the child was found after the accident. The evidence shows that at no point between the wheels was the truck as high as eighteen inches above the *675 ground. Defendant's theory requires that the child be running toward the truck yet fell in such a way that practically her entire body go feet first under the truck. This is not impossible, but does seem improbable. Also there is evidence (contradicted by the truck driver) that the truck was not moved after it stopped and that at that time the body of the child was not wedged or jammed beneath the rear wheel of the truck in such manner as would reasonably be calculated to produce injuries such as plaintiff suffered. If the child was struck at the point where she lay when found she could hardly have run into the side of the truck, because at this point the trailer stood parallel to and only a short distance from the line of progress of the truck.
Without the benefit of the rule of res ipsa loquitur, the physical facts testified to are sufficient, when coupled with admissions of the truck driver in court and to the witness Applefield (if he is believed) from which it could reasonably be deducted that the child was in the driveway ahead of the truck, that it was the bumper or front wheel and bumper of the truck which inflicted the injuries upon her, that when the driver felt the jar of the front wheel passing over the child he immediately applied brakes and brought the truck to a stop just as the rear wheel reached the child; and that the reason the driver did not see the child was that he was looking to his left along the long building there to try and locate the place of business of Beverage Distributors; and that, had the driver been exercising proper care under the circumstances he could and would have seen the child in time to have avoided the accident. See Vining v. American Bakeries Co. et al., 118 Fla. 572, 159 So. 670.
On the question of contributory negligence we need only say that there was, in no view of the case, sufficient evidence to require the Circuit Court to withdraw this question from the jury or disturb its verdict with respect to this defense.
The amended second Count of the plaintiff's declaration charges that the defendant's servant and employee, acting in the scope of his employment as such servant, wrongfully, unlawfully and forcibly drove defendant's truck upon a private driveway of plaintiff's father and against plaintiff thereby inflicting upon her bodily injuries. We have held that alleged error in overruling a demurrer to this count is not properly before us. However, if the facts proven do not show lawful authority on the part of the servant to act for and bind his master in committing the trespass, if one was committed, then that portion of the declaration alleging that the servant was acting within the scope of his employment has not been proven and a verdict should have been directed for the defendant. We think the law is correctly stated in 35 American Jurisprudence 1005, Trespass Sec. 572. "The test of liability is whether the acts constituting the trespass were within the general scope of the servant's employment while engaged in the employer's business, and were done with the view of furthering that business."
It is here necessary to state in some detail a series of facts testified to by plaintiff's witness whom the jury had the right, in the proper exercise of its function, to believe. The jury had before it evidence from which it could lawfully find that:
Plaintiff's father rented the southeast corner of the building at No. 1160 Fourth Street South, to two brothers by the name of Applefield who operated a business under the name of "Beverage Distributors". That business consisted of purchasing bottled beverages at wholesale and distributing them by truck to individual customers at customers' homes or places of business. This rental was agreed upon by plaintiff's father only after he had been assured that all deliveries to Beverage Distributors would be made before 10:30 o'clock in the morning and that the place would be closed the remainder of the day. He gave instructions that deliveries should be made from the alley at the rear of the property. Later, and before the accident he noticed delivery trucks using the driveway and instructed one of the Applefields to have such use discontinued. One witness testified *676 he had used the driveway for his own convenience and Mr. Cuccinello had ordered him to stop. Another witness testified as to hearing Mr. Cuccinello stop people from using the driveway. Beverage Distributors placed on their door a small placard reading "Make Delivier Any Morning between 9:00 & 10:30 Phone 94-463 Beverage Dist."
The defendant on at least two occasions before the accident had refused to sell Coca-Cola to Beverage Distributors. Some three weeks before the accident one of the partners of Beverage Distributors called the defendant's office by telephone and asked them to pick up some empty Coca-Cola bottles which they had collected, directing that this be done between 9:00 and 10:30 in the morning. Defendant's employee who received this message wrote the order quoted above. This order some time later reached the driver of the truck which was involved in the accident and it was pursuant to this order that he was going to the place of business of Beverage Distributors when the accident occurred. In the meantime, however, one of the Applefield's had delivered the bottles to the defendant. He testified that this occurred about May 2nd or 3rd, which would have been about a week before the accident. At that time he requested that the "pick-up order" be cancelled.
That plaintiff went to kindergarten in the morning and did not use her playground until later in the day.
The facts above stated are not all admitted and some are definitely disputed but the jury would have been justified in finding them true upon the evidence before it.
The question which we are called upon to decide is whether the trial judge committed error in permitting the case to go to the jury on the second or "trespass" count of the declaration. We hold that he did not.
One who enters upon the private premises of another does so as a trespasser, an invitee or a licensee.
The defendant is a corporation and consequently acts only through individuals and, of course, in the operation of its business acts through many individuals. But the defendant is charged with notice of all transactions had by those through whom it does business. When ample time exists for communication between different employees a failure of one employee to advise another of transactions affecting the corporate business is the fault only of the corporation. The accepting as true the evidence above recited the liability of the defendant is to be determined as if the driver of the truck had known that the instructions to pick up the bottles had specified the time of day at which this was to be done and had known that the bottles had already been returned and these instructions had been cancelled and had also known that the defendant on at least two occasions had refused to sell Coca-Cola to Beverage Distributors, and having no business with Beverage Distributors or any one else upon the premises, had driven into the private driveway. Under such circumstances the jury would be justified in finding that the defendant was without any express or implied invitation or license to enter the driveway.
The defendant cannot shield itself behind the good faith and innocent intentions of its driver when it possessed knowledge which rendered the entry unjustified, and withheld that knowledge from its employee operating the truck.
We do not overlook the rule that the maintenance of a place of business, or even a home, may constitute an implied invitation or license to persons having business with or proper occasion to visit or interview the owner or occupant to enter the premises for such purpose; nor have we failed to carefully examine all evidence favorable to the defendant, including the sign erected by Beverage Distributors with the acquiescence of plaintiff's father. But there is no evidence that the defendant at the time and place of the entry had, or had any reason to believe that it had any proper occasion to have its truck upon the *677 premises in question. Certainly a jury question was presented.
Defendant next urges that the evidence shows that plaintiff's injuries were the result of an unavoidable accident. We have held there was sufficient evidence to take the case to the jury on the issue of negligence in the operation of defendant's truck. "Unavoidable accident" is not a defense to an action for trespass.
We find no reversable error in the giving or refusing of instructions to the jury.
Finally attention is called to an occurrence which took place during the argument of the case before the jury. It is recorded in a supplement to the transcript of record as follows:
"* * * During the argument of Mr. Thomas V. Kiernan, one of counsel for plaintiff, the following occurred:
"Mr. Carey: Counsel for the defendant has requested that the court require both counsel for the plaintiff and the defendant to confine themselves to the evidence produced. And at the point this motion was made counsel for the plaintiff, in opening his argument, was referring in detail to a national campaign of the Coca-Cola Company advertising in the magazine, with pictures of beautiful girls. He had just finished making the statement that the Coca-Cola Corporation had no soul or conscience, that it did not hesitate to take the life blood of people in the handling of its affairs.
"The Court: I do not believe counsel said quite that. He said some corporations. I am instructing the jury and counsel for both parties to confine themselves to the discussion of the evidence and the inferences properly to be drawn from it. But nevertheless they have the right to illustrate their arguments with reference to matters of the every-day knowledge of every one. They are not confined in their illustrations to things specifically brought out in evidence.
"Thereupon, Mr. Kiernan continued with his argument."
It will be noted that the transcript does not purport to give the language used by Mr. Kiernan, but only Mr. Carey's statement of what was said, which the court at once said was inaccurate in part at least. The Court did instruct the jury in response to Mr. Carey's request. No further instructions were requested on this point. No motion for a mistrial was made. The verdict is, admittedly, not excessive in amount.
Counsel should be careful to refrain from improper argument. Trial judges should require them to do so.
However, opposing counsel cannot predicate error here upon an incident in which trial court granted the only request made, that counsel confine themselves to the evidence. The added statement that illustrations might be drawn from matters of every-day knowledge was proper. There is no indication that any further improper argument was made.
Finding no reversable error the judgment of the Circuit Court is affirmed.
CHAPMAN, Acting Chief Justice, SEBRING and HOBSON, JJ., concur.